Plaintiff appealed from judgment dismissing her suit against W.A. Mabry, her landlord, and his insurer, Protective Indemnity Company, wherein she sought to recover a large amount of damages allegedly sustained by her on account of the defective condition of one of the porch posts of the leased premises at 1500 Cedar Street, in the City of Shreveport, Louisiana. Specifically, she alleged that on or about January 31, 1947, she went onto the front porch of the leased premises "and in the course of walking upon said porch, leaned against the left front post, supporting the roof", and "it came loose from the floor and caused her, in an attempt to stop herself from falling headlong upon the ground, some four feet distant, to stumble backward and fall flat upon the porch"; and she further alleges: "That the post which broke or came loose when Petitioner leaned against it was weak, defective and rotten on the underside, which fact was not known to Petitioner before said accident, but which fact was known, or should have been known, by the lessor, or owner, and its insurer * * * ".
Defendants deny that the porch was rotten or defective in any way, and deny that plaintiff fell, as alleged by her. They aver that if she did fall, which is denied, she suffered no injuries or damage as a result thereof. In the alternative, they plead that if the post was rotten or defective and plaintiff fell on account of its weakened condition, she was contributorily negligent in that she had knowledge of said condition and failed to exercise due and proper care while on the porch and that her negligence in this respect precludes recovery by her.
The alleged accident occurred, if it did occur, about midnight, January 24, 1947. Plaintiff and her witnesses all testified it occurred about midnight of January 31, 1947. She testified that immediately prior to the accident she was inside the house. At that time Pearl Brooks, her husband, Andrew Patterson and his wife, Hattie, and her son, Eddie King, were also in the house. Andrew, who was to some extent intoxicated, walked out of the house onto the porch. He was very soon followed by Eddie King, his stepson. Within a brief time thereafter he was heard by those within the house and by some of the neighbors holloing loudly as though in distress. Pearl Brooks, attracted by the holloing, was the next one to come out of the house and onto the porch. He discovered Patterson on the ground to the left of the steps and Eddie King standing over him. He says King was trying to assist Patterson to his feet. There is sharp contradiction as to why Patterson was on the ground. Pearl Brooks, although he did not see him between the time he and King went out of the house until he saw him on the ground, testified that Patterson fell as he started down the steps. Another negro man, Johnnie Jones, who lives close to plaintiff's house, being attracted by a commotion on the front porch, testified that he saw Eddie King strike Patterson several blows with his fist while on the porch, knock him therefrom, and in the melee the post was disengaged from its fastening to the porch floor. We lean strongly to the conclusion that Johnnie Jones' version of the matter is correct. His testimony is not contradicted except by that of Pearl Brooks, and, as said before, he did not see what happened on the porch until Patterson was holloing upon the ground. Jones' testimony, in material respects, is corroborated by that of other witnesses.
It is of some significance that neither King nor Patterson were introduced as witnesses by plaintiff. Patterson's wife, Hattie, testified on defendant's behalf, and while on the porch at the time plaintiff *Page 340 
claims to have fallen down, did not see the fall and did not, while there, hear any one say that plaintiff did fall.
Plaintiff and Hattie Patterson were immediately behind Pearl Brooks when he went from the front room of the house onto the porch. Plaintiff says that as she looked down "at the man (on the ground) I cut over to the post with my right hand and it came out from under the porch with me, causing me to fall backward", etc. Pearl Brooks testified that plaintiff looked down at the man on the ground, "with her right arm around the post on the left side, and * * * finally, I guess, by her weight the bottom end of the post came out and she was suffered to try to keep from falling out on her face, and she backed up and her right foot 'kareeled' and she fell backward". It so happened that at this time Brooks was on the ground trying to assist Patterson to arise. It is worthy of comment that he, while thus engaged, should have at the same time observed all the details of the accident. His version thereof does not fully coincide with that of plaintiff.
Plaintiff introduced three witnesses who in their testimony tracked each other much more closely than generally happens where this number of witnesses sincerely try to tell the truth about an incident all observed at the same time. Of these witnesses, two were men and one was a woman. They testified that they had come from a "joint" not far away that was conducted by a negro by the name of Culbert, where they had danced. The men were escorting the woman to her home. They testified that as they passed plaintiff's home their attention was attracted toward it by the holloing of a man they observed on the ground in front of the porch not far away. They stopped not over ten feet from the edge of the porch and they testified that while there they saw plaintiff put her arm around the post and as she leaned forward, watching the man on the ground, the post gave way and she fell backward. We doubt very much that these people were there at all at the time they say. They were not seen by either plaintiff or other persons then present and neither of them made their presence known to any of the several persons who were thereabout.
If we are correct in our interpretation of the testimony of the three referred to witnesses, coming from the "joint" they would have passed the woman's home before getting to that of plaintiff. It is also shown definitely that the "joint" was not open the night the accident is supposed to have happened, because on that date it was undergoing repairs.
In addition to the unreasonableness of plaintiff's version of the alleged accident there are several other proven facts and some circumstances that, to our mind, effect her credibility materially and weigh heavily against her.
It is shown that on two prior occasions plaintiff claimed to have been injured by defects in this house. She accepted small amounts in satisfaction of her asserted injuries. Two witnesses in this case testified that plaintiff suggested to them that if they would testify in support of her suit they would be rewarded in a substantial manner by her.
It is also worthy of note that plaintiff alleged, and she, her husband and her three witnesses, above referred to, testified positively that the accident occurred the night of January 31st, whereas it is otherwise positively proven that it happened the night of January 24th.
It is passing strange that plaintiff and her husband could have, if acting honestly, forgotten the true date of the accident when giving to their attorney the facts thereof upon which to base the suit. They must have done this immediately after the alleged occurrence as this suit was filed on February 12th, only nineteen days thereafter. And, it is also worthy of note that the three witnesses, above mentioned, should by mere coincidence have fallen into the same error.
Another circumstance, not to be entirely overlooked, lies in the fact that plaintiff weighs between 275 and 300 pounds. She and her witnesses say that she leaned against the post. Had she done this, being so heavy, the chances are largely that she would have fallen forward to the ground instead of backward upon the floor. *Page 341 
[1] In addition to all of the foregoing reasons that militate against plaintiff's' suit, if the post was knocked loose in the fight between Patterson and King, surely the landlord should not be held responsible for its giving way when plaintiff leaned against it. She and her husband testified that the post, prior to the accident, had the appearance of being sound.
[2] This case bristles with much evidence and many circumstances that would justify us in concluding that it had been wholly fabricated. Anyway, no court of justice would be willing to condemn defendants in damages on the character of testimony offered by plaintiffs.
Prior to trial of the case W.A. Mabry died testate, leaving a widow in community, Mrs. Cornelia B. Mabry, and Mrs. Josephine Mayfield, as his sole heir and legal representative, who were instituted as executrixes under his last will and testament. They were substituted as parties defendant herein.
For the reasons herein assigned, the judgment appealed from is affirmed at plaintiff's cost.
KENNON, J., absent.